IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 06–cv–00380–EWN–BNB


KELLY CRAWFORD,

     Plaintiff,

v.

UNITED SERVICES AUTOMOBILE
ASSOCIATION INSURANCE, a Texas
Insurance Company,

     Defendant.

---

## ORDER AND MEMORANDUM OF DECISION

---

     This is an employment discrimination case.  Plaintiff Kelly Crawford asserts that

Defendant United Services Automobile Association,[1] her former employer: (1) discriminated

against her based on her sex and age, in violation of Title VII of the Civil Rights Act of 1963, 42

U.S.C. § 2000e, *et seq.* (2006) ("Title VII"), and the Age Discrimination in Employment Act, 29

U.S.C. § 621, *et seq.* (2006) (the "ADEA"), respectively; (2) violated the Equal Pay Act, 29

U.S.C. § 206(d) (2006) (the "Equal Pay Act") by paying her less than her male peers; and (3)

---

[1] I gather from the parties' submissions that the caption in this case mistakenly identifies Defendant United Services Automobile Association as "United Services Automobile Association Insurance."  (Def.'s Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12[b][1] and [b][6] and to Compel Arbitration [filed Mar. 9, 2006].)

retaliated against her for engaging in protected activity under Title VII, the Equal Pay Act, and the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (2006) ("FLSA").  Additionally, Plaintiff asserts that Defendant breached her employment contract with respect to her wages and discharged her in violation of public policy.  Plaintiff seeks declaratory and injunctive relief as well as compensatory and punitive damages.

This matter is before the court on: (1) "Defendant's Motion to Dismiss Pursuant to [Federal Rules of Civil Procedure] 12(b)(1) and 12(b)(6) and to Compel Arbitration," filed March 9, 2006; and (2) Defendant's "Objection to Magistrate Judge's Scheduling Order, and Alternative Motion to Stay Discovery and Expedite Deferral to Arbitration," filed May 16, 2006.  Jurisdiction is premised upon federal question original jurisdiction, 28 U.S.C. § 1331 (2006).

## FACTS

### 1.      *Factual Background*

The following facts are taken from Plaintiff's amended complaint and the parties' submissions in connection with Defendant's motion to dismiss.  Plaintiff, a female born on November 10, 1956, worked for Defendant from December 9, 1991 through August 27, 2004. (Def.'s Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12[b][1] and [b][6] and to Compel Arbitration at 2 [filed Mar. 9, 2006] [hereinafter "Def.'s Br."].)  Defendant is an insurance company that primarily serves United States military officers and their eligible dependants. (Notice of Removal, Ex. A–2 ¶ 7 [Am. Compl.].)  From 1991 through 1998, Plaintiff worked for Defendant as a customer service representative.  (*Id.*, Ex. A–2 ¶ 10 [Am. Compl.].)  In 1998, Plaintiff began working for Defendant as a staff appraiser.  (*Id.*, Ex. A–2 ¶ 11 [Am. Compl.].)

Plaintiff's job duties as staff appraiser included making estimates of motor vehicle repair costs. (*Id.*, Ex. A–2 ¶ 12 [Am. Compl.].)  Plaintiff asserts that although her work was of the same caliber as that of her male counterparts, Defendant paid her a lower salary than male staff appraisers.  (*Id.*, Ex. A–2 ¶¶ 15–16 [Am. Compl.].)

In or about November 2002, Plaintiff confronted her supervisor about the alleged compensation difference between male and female staff appraisers.  (*Id.*, Ex. A–2 ¶ 18 [Am. Compl.].)  Also in or about November 2002, Plaintiff's counsel indicated to Defendant that Plaintiff might not participate in a class-wide settlement of claims for overtime pay under FLSA. (*Id.*, Ex. A–2 ¶ 20 [Am. Compl.].)  Plaintiff asserts that in early 2003, Defendant began a pattern of issuing false and overstated reprimands against her.  (*Id.*, Ex. A–2 ¶ 21 [Am. Compl.].)  In or about August 2003, Plaintiff entered into a final settlement of her FLSA claims against Defendant. (*Id.*, Ex. A–2 ¶ 23 [Am. Compl.].)

On June 1, 2004, Defendant notified its employees of the impending implementation of a binding dispute resolution program (the "Program"), which provides for mandatory arbitration of certain issues.  (Def.'s Br. at 2.)  As explained in the plain-language guide book (the "Program Guide"), the Program provides for four possible methods of dispute resolution: (1) "dialogue with management," meaning a conversation between an employee and her manager; (2) "facilitated dialogue with management," signifying a conversation among an employee, her manager, and a trained facilitator; (3) "external mediation," meaning resolution of claims relating to legal rights by an objective, third-party mediator; and (4) "external arbitration," or resolution of claims involving legal rights by an objective, third-party arbitrator, who may award remedies as in a court of law.

-3-

(*Id.*, Ex. A–2 at 6, 8–11[Program Guide].)  Pursuant to the "Description and Rules" book

("Program Description and Rules"), in the instance of external mediation or arbitration under the

Program, all relevant parties may have legal representation during the proceedings.  (*Id.*, Ex. A–1

at 8 [Program Description and Rules], Ex. A–2 at 8–9 [Program Guide].)

      Further, the Program Description and Rules expressly state that: (1) "[a]ll [d]isputes not

otherwise settled by the [p]arties shall be finally and conclusively resolved through

arbitration . . . instead of through trial before a court;" and (2) "[p]roceedings under the Program,

including arbitration, shall be the exclusive, final and binding method by which [d]isputes are

resolved."  (*Id.*, Ex. A–1 at 3, 4 [Program Description and Rules].)  The Program Description and

Rules define the term "dispute" as "all legal and equitable claims, demands, and controversies, of

whatever nature or kind, whether in contract, tort, under statute or regulation, or some other law,

between persons bound by the Program," and expressly contemplate "disputes" as conflicts

involving, inclusively:

> 1. this Program [d]escription, the [r]ules, or any other matter relating to the
> Program;

> 2. the employment or potential reemployment of an [e]mployee . . .; [and]

> 3. any other matter relating to or concerning the relationship between the
> [e]mployee and [Defendant] including . . . allegations of discrimination based on
> race, sex, religion, national origin, age, veteran status, disability, or other legally
> protected characteristic; sexual or other kinds of harassment; wrongful discharge;
> workers' compensation or other legally prohibited retaliation; defamation;
> infliction of emotional distress; failure to pay wages; and failure to comply with
> any mandatory leave or reinstatement obligations.

(*Id.*, Ex. A–1 at 1–2 [Program Description and Rules].)

Finally, the Program Description and Rules state that "[e]mployment or continued employment after the [e]ffective [d]ate of this Program constitutes consent by both the [e]mployee and [Defendant] to be bound by this Program, both during employment and after termination of employment." (*Id.*, Ex. A–1 at 1, 5 [Program Description and Rules].)  Although the Program is binding on Defendant, the Program "may be terminated by [Defendant] at any time by giving at least [thirty] days notice of termination to current [e]mployees.  However, termination shall not be effective as to [d]isputes for which a proceeding has been initiated pursuant to the [r]ules prior to the effective date of the Program's termination." (*Id.*, Ex. A–1 at 4 [ProgramDescription and Rules].)

On August 2, 2004, the Program took effect.  (*Id.* at 3.)  On the same date, Plaintiff's counsel notified Defendant's workers' compensation insurance carrier that Plaintiff intended to contest a pending claim arising out of a May 2001 motor vehicle accident.  (Notice of Removal, Ex. A–2 ¶ 23 [Am. Compl.].)  On August 27, 2004, Defendant terminated Plaintiff's employment.  (*Id.*, Ex. A–2 ¶ 24 [Am. Compl.].)

After her termination, Plaintiff consulted and retained counsel.[2]  (Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12[b][1] and 12[b][6] and to Compel Arbitration at 4 [filed Mar. 27, 2006] [hereinafter "Pl.'s Resp."].)  Plaintiff's counsel wrote Defendant a letter outlining Plaintiff's employment discrimination claims against Defendant.  (*Id.*)

---

[2]Plaintiff is represented by different counsel in connection with the motion presently before the court.  (Pl.'s Resp. at 4, Ex. 1 ¶ 6 [Killmer Aff.].)  For the purposes of this Order and Memorandum of decision, I do not differentiate between Plaintiff's former and present counsel.

On November 4, 2004, counsel for Plaintiff and Defendant participated in a telephone conference. (*Id.*) Plaintiff alleges, and Defendant denies, that during the November 4, 2004 telephone conference, Defendant's counsel stated that: (1) Plaintiff could only mediate her dispute without legal representation; and (2) Defendant would not pay any monies to resolve the dispute. (*Id.*; *cf.* Def.'s Reply to Pl.'s Br. in Opp'n to Def.'s Mot. to Dismiss Pursuant to Fed. R. Civ. P. 12[b][1] and 12[b][6] and to Compel Arbitration at 6 [filed Apr. 11, 2006] [hereinafter "Def.'s Reply"].)

**2.      *Procedural History***

On January 26, 2005, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). (Notice of Removal, Ex. A–2 ¶ 25 [Am. Compl.].) On October 25, 2005, the EEOC notified Plaintiff of her right to sue. (*Id.*, Ex. A–2 ¶ 26 [Am. Compl.].) On January 23, 2006, Plaintiff filed a complaint in state court. (Notice of Removal, Ex. A–3 [Compl.] [filed Mar. 3, 2006].) Plaintiff asserted the following seven claims against Defendant: (1) sex discrimination and hostile work environment in violation of Title VII; (2) retaliation under Title VII; (3) age discrimination in violation of the ADEA; (4) violation of the Equal Pay Act; (5) retaliation under the Equal Pay Act and FLSA; (6) discharge in violation of public policy; and (7) breach of contract. (*Id.*, Ex. A–3 ¶¶ 27–57 [Compl.].) On February 6, 2006, Plaintiff amended her complaint, adding an eighth claim for payment of her shift compensation differential. (*Id.*, Ex. A–2 ¶¶ 58–63 [Am. Compl.].) On March 3, 2006, Defendant removed the action to this court. (*Id.*)

**a.      *Defendant's Motion to Dismiss and Compel Arbitration***

On March 9, 2006, Defendant filed a motion to dismiss and to compel arbitration.  (Def.'s Br.)  Defendant argues that dismissal of Plaintiff's claims is appropriate because the Program's arbitration clause: (1) supercedes this court's subject matter jurisdiction over the instant case; and (2) proscribes Plaintiff from stating a claim upon which this court may grant relief.  (*Id.* at 14.) Additionally, Defendant moves the court to enforce the Program and compel submission of Plaintiff's claims to an arbitral forum.  (*Id.*)  On March 27, 2006, Plaintiff filed a response to Defendant's motion.  (Pl.'s Resp.)  On April 11, 2006, Defendant filed a reply in support of its motion.  (Def.'s Reply.)

**b.      *Defendant's Objection to the Magistrate Judge's Scheduling Order***

On March 22, 2006, the magistrate judge issued an order setting a scheduling conference and planning meeting in this case pursuant to Federal Rules of Civil Procedure 16(b) and 26(f), respectively.  (Order Setting Rule 16[b] Scheduling Conference and Rule 26[f] Planning Meeting [filed Mar. 22, 2006].)  On April 12, 2006, Defendant filed an unopposed motion to continue the all of the deadlines set forth in the March 22, 2006 order until resolution of the motion to dismiss and compel arbitration presently before this court.  (Unopposed Mot. to Continue R. 16[b] Scheduling Conference and R. 26[f] Planning Meeting [filed Apr. 12, 2006].)  On April 12, 2006, I referred the unopposed motion to the magistrate judge.  (Mem. [filed Apr. 12, 2006].)  On April 18, 2006, the magistrate judge denied the unopposed motion.  (Min. Order [filed Apr. 18, 2006].) The scheduling conference and planning meeting took place as scheduled.  (Courtroom Mins. [filed May 1, 2006].)  On May 1, 2006, the magistrate judge filed a scheduling order.  (Scheduling Order [filed May 1, 2006].)

On May 11, 2006, Defendant objected to the magistrate judge's scheduling order.  (Obj. to Magistrate Judge's Scheduling Order and Alternative Mot. to Stay Disc. and Expedite Deferral to Arbitration [filed May 11, 2006].)  Specifically, Defendant objected to the magistrate judge's setting a full discovery schedule while its motion to dismiss and compel arbitration remained pending, and moved the court to set aside the scheduling order.  (*Id.* at 5–6.)  Alternatively, Defendant moved the court to stay discovery pending determination of its motion to dismiss and compel arbitration.  (*Id.* at 6–8.)  Defendant's submission was docketed as a motion to stay.  On May 12, 2006, Defendant filed a notice styled "Correction Regarding ECF Title of Docket Document [Number] 23," in which it: (1) notified the court that its May 11, 2006 objection to the magistrate recommendation had been improperly docketed as a motion to stay; and (2) moved the court to amend the docket sheet to reflect the true nature of the submission.  (Correction Regarding ECF Title of Docket Document No. 23 [filed May 12, 2006].)  On May 15, 2006, the court: (1) terminated Defendant's May 11, 2006 motion and May 12, 2006 correction notice; and (2) directed Defendant to refile its objection.  (Docket Annotation [entered May 15, 2006].)  On May 16, 2006, Defendant refiled its objection to the magistrate judge's scheduling order.  (Obj. to the Magistrate Judge's Scheduling Order, and Alternative Mot. to Stay Disc. and Expedite Deferral to Arbitration [filed May 16, 2006] [hereinafter, "Def.'s Obj."].)  Defendant's May 16, 2006 filing is identical to its May 11, 2006 filing, save an explanatory footnote detailing the procedural history described above.  (*Id.*)  Given its tenor, I accept Defendant's objection as timely filed.

**ANALYSIS**

**1.      *Legal Standard***

**a.      *Rule 12(b)(6) Motion to Dismiss***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a

claim for "failure to state a claim upon which relief may be granted."  Fed. R. Civ. P. 12(b)(6)

(2006).  For the purposes of a Rule 12(b)(6) motion, a court should only dismiss the claim "when

it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him

to relief, accepting the well-pleaded allegations of the complaint as true and construing them in

the light most favorable to the plaintiff."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th

Cir. 2003) (citing *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 [10th Cir. 1997]).  "The court's

function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might

present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a

claim for which relief may be granted."  *Id.* (citing *Sutton v. Utah State Sch. for the Deaf & Blind*,

173 F.3d 1226, 1236 [10th Cir. 1999]).

**b.      *Rule 12(b)(1) Motion to Dismiss***

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may move the court to

dismiss a claim for "lack of jurisdiction over the subject matter."  Fed. R. Civ. P. 12(b)(1) (2006).

When a defendant challenges subject matter jurisdiction, the plaintiff must establish such

jurisdiction by a preponderance of the evidence.  *Southway v. Cent. Bank of Nigeria*, 328 F.3d

1267, 1272 (10th Cir. 2003).  The Tenth Circuit has explained that motions to dismiss for lack of

subject matter jurisdiction under Rule 12(b)(1) may take one of two forms.  "First, a party may

make a facial challenge to the plaintiff's allegations concerning subject matter jurisdiction, thereby

questioning the sufficiency of the complaint." *U.S. v. Rodriguez Aguirre*, 264 F.3d 1195, 1203

(10th Cir. 2001).  In addressing a facial attack, the court must accept as true "'all well-pleaded

facts in the complaint as distinguished from conclusory allegations.'" *Smith v. Plati*, 258 F.3d

1167, 1174 (10th Cir. 2001) (quoting *Mitchell v. King*, 537 F.2d 385, 386 [10th Cir. 1976]).

"Second, a party may go beyond allegations contained in the complaint and challenge the

facts upon which subject matter jurisdiction depends." *Rodriguez Aguirre*, 264 F.3d at 1203.  In

addressing a factual attack, the court does not presume the truthfulness of the complaint's factual

allegations. *Id.*; *see also Holt v. U.S.*, 46 F.3d 1000, 1003 (10th Cir. 1995).  In a factual attack,

the motion "can include references to evidence extraneous to the complaint without converting it

to a Rule 56 motion." *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987).  Indeed, the

court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to

resolve disputed jurisdictional facts under 12(b)(1)." *Id.*

## 2.    *Federal Arbitration Act and Choice of Law*

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement "shall

be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the

revocation of any contract."  9 U.S.C. § 2 (2006).  It is undisputed that the FAA governs the

instant case.  Indeed, the Program Description and Rules expressly provide that the FAA controls

"the Program . . . and any proceedings under the Program or the [r]ules, including any actions to

compel, enforce, vacate, or confirm proceedings, awards, orders of an arbitrator, or statements

under the Program."  (Def.'s Br., Ex. A–1 at 4 [Program Description and Rules].)  The FAA

permits a district court to compel arbitration where one party has failed or refused to comply with

an arbitration agreement. *Gourley v. Yellow Transp.*, 178 F. Supp. 2d 1196, 1201 (D. Colo. 2001). A court may only compel arbitration if a valid agreement to arbitrate exists between the parties and the specific dispute at issue falls within the scope of that agreement. See *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 651 (1986) ( holding "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit").

State contract law principles govern determination of whether a valid arbitration agreement exists. 9 U.S.C. § 2 (2006); *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). If the parties have made an effective contractual choice of law, courts will follow that choice. *See SDJ Ins. Agency, L.L.C. v. Am. Nat'l Ins. Co.*, 292 F.3d 689, 692 (10th Cir. 2002) (applying Colorado law). Here, the parties do not dispute that Colorado law applies to this matter. (Def.'s Br. at 12; Pl.'s Resp. at 6.) Moreover, pursuant to the Program, "the substantive law applied shall be [the] state or federal substantive law which [sic] would be applied by a United States District Court sitting at the place of the proceeding." (Def.'s Br., Ex. A–1 at 12 [Program Description and Rules].)

**3.     *Evaluation of Claims***

   **a.     *Preliminary Matter: Determination of Arbitrability***

As an initial matter, Defendant briefly argues that any challenges to the validity of the Program are arbitrable. (*Id.* at 2–3.) Accordingly, I must determine whether this court or an arbitrator has the power to decide whether Plaintiff's claims about the Program's validity are themselves subject to arbitration. Defendant accurately argues that the Supreme Court has held that arbitration clauses are severable from the contracts in which they are contained, and

arguments as to the validity of the contract overall are arbitrable.  *See Buckeye Check Cashing,*

*Inc. v. Cardegna*, 126 S. Ct. 1204, 1210 (2006) (holding challenge "to the validity of the contract

as a whole, and not specifically to the arbitration clause, must go to the arbitrator"); *Prima Paint*

*Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967) (determining a claim of fraud in

the inducement of the entire contract, not merely the arbitration clause, is a matter to be referred

to the arbitrators).  Defendant's reliance is misplaced because the cited cases involve situations in

which an arbitration clause was a severable part of a problematic contract for services.  By way of

illustration, *Buckeye Check Cashing* involved deferred-payment transactions governed by

contracts that contained transaction terms violative of state law.  126 S. Ct. at 1208.  Similarly,

*Prima Paint* involved performance of consulting and other services in connection with a sale of a

business governed by a fraudulently induced contract that set forth terms of transfer of operations.

388 U.S. at 397–98.

Here, the Program consists in its entirety of an alternative dispute resolution agreement,

specifically including arbitration.  (Def.'s Br., Ex. A–1, *passim* [Program Description and Rules].)

Thus, in effect, the arbitration issue is already severed.  The only contentions at issue in this

matter relate to the Program agreement itself.  Accordingly, this court is the appropriate body to

determine the validity of the Program.  *See Prima Paint*, 388 U.S. at 403–04 (holding that federal

courts may adjudicate where the issue in contention goes to the making of the agreement to

arbitrate).

   **b.**      ***Defendant's Motion to Compel Arbitration***

The FAA governs motions to compel arbitration under written agreements.  9 U.S.C. § 4

(2006).  Under the FAA, a court may order parties to arbitrate in accordance with the terms of

their written agreement "upon being satisfied that the making of the agreement for arbitration or

the failure to comply therewith is not in issue."  *Id.*  Importantly, "[b]efore a party may be

compelled to arbitrate under the [FAA], the district court must engage in a limited inquiry to

determine whether a valid agreement to arbitrate exists between the parties and whether the

specific dispute falls within the scope of that agreement."  *Houlihan v. Offerman & Co., Inc.*, 31

F.3d 692, 694–95 (8th Cir. 1994); *see Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511,

1515–16 (10th Cir. 1995) (deeming valid arbitration agreement and dispute within the scope of

agreement to be conditions precedent to arbitration).  Here, Defendant argues that this court

ought compel the parties to arbitrate the dispute because: (1) as a matter of Colorado contract

law, the Program constitutes an enforceable arbitration agreement supported by consideration;

and (2) Plaintiff's claims fall within the Program's express scope.  (Def.'s Br. at 9–14.)  I address

each issue separately.

### i.   *Validity of the Program*

First, "[a] court has jurisdiction to determine initially the existence of a valid arbitration

agreement unless there is clear and unmistakable evidence within the four corners of the

agreement that the parties intended to submit to an arbitrator the question of whether an

agreement to arbitrate exists."  *Gourley*, 178 F. Supp. 2d at 1202 (citations and internal quotation

marks omitted); *see also Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779

(10th Cir. 1998) (holding "[u]nless the parties clearly and unmistakably provide otherwise, the

question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator" and "whether a [contract] creates a duty for the parties to arbitrate the particular grievance — is undeniably an issue for judicial determination"). Accordingly, I analyze the validity of the Program.[3] *See Shankle v. B-G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1235 (10th Cir. 1999) (holding court may consider whether parties' arbitration agreement is valid); *Perez v. Hospitality Ventures Denver LLC*, 245 F. Supp. 2d 1172, 1173 n.2 (D. Colo. 2003) ("There is no question [federal courts] have jurisdiction to resolve the threshold issue of whether [a] valid and enforceable arbitration agreement exists.").

In determining the validity of an agreement to arbitrate, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *First Options*, 514 U.S. at 944. Thus, although "courts may not invalidate arbitration agreements under state laws applicable only to arbitration provisions," general contract defenses such as fraud, duress, or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Here, Plaintiff argues the Program is invalid and unenforceable for four reasons: (1) the Program is an illusory contract lackin consideration; (2) the Program constitutes an unenforceable contract of adhesion; (3) Defendant waived its right to impose arbitration by rejecting arbitration and by removing

---

[3]I note that as a general rule, federal policy demands that "any doubts concerning the scope of arbitrable issues" be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). "The presumption in favor of arbitration is properly applied in interpreting the scope of an arbitration agreement; however, this presumption disappears when the parties dispute the existence of a valid arbitration agreement." *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002) (citations omitted).

Plaintiff's action to federal court; and (4) Defendant breached the Program contract by forbidding Plaintiff to have legal representation present during mediation.  (Pl.'s Resp.)  I address each point in turn.[4]

### *(1)      Illusory Contract*

Plaintiff argues that the Program is illusory for lack of mutual consideration, and is thus void and unenforceable.  (Pl.'s Resp. at 11–12.)  It is, of course, a bedrock principle of law that a valid contract requires consideration.  *Ireland v. Jacobs*, 162 P.2d 203, 206 (Colo. 1945) (holding "nominal consideration for almost any contract is sufficient," but all valid contracts require consideration).  "Consideration is defined as [a] bargained for exchange whereby the promisor [] receives some benefit or the promisee [] suffers a detriment."  *Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126, 1130 (7th Cir. 1997); *see also Kennedy v. William R. Hudson, Inc.*, 659 F. Supp. 900, 904 (D. Colo. 1987) ("To constitute consideration, a performance or a return promise must be bargained for.").

Here, Plaintiff cites *Gourley v. Yellow Transportation LLC*, 178 F. Supp. 2d 1196, 1202 (D. Colo. 2001), for the proposition that an arbitration agreement binding on only one party is illusory for lack of consideration.  (Pl.'s Resp. at 11.)  Although Plaintiff's recitation of the law is correct, her application to the instant case is misguided.  Here, Plaintiff and Defendant are both bound to arbitration under the Program.  The Program Description and Rules provide "this Program applies to and binds the [Defendant], each [e]mployee, . . . and the heirs, beneficiaries,

---

[4]In the interest of clarity, I present and analyze Plaintiff's arguments outside of the sequential order presented in her response brief.

-15-

and assigns of any such person or entity."[5]  (Def.'s Br., Ex. A–1 at 2 [Program Description and

Rules].)  Under the Program, Plaintiff, in her capacity as an employee, is a promisor.  She has

promised to arbitrate her legal claims, and has thus suffered the detriment of waiving her rights to

trial.  In exchange, Defendant has promised to arbitrate its legal claims, and has thus suffered the

same detriment.  One party's agreement to arbitrate is adequate consideration for the other

party's agreement to arbitrate.  *Gibson*, 121 F.3d at 1131; *see also Hellenic Lines, Ltd. v. Louis*

*Dreyfus Corp.*, 372 F.2d 753, 758 (2d Cir. 1967) ("[One party's] promise to arbitrate was

sufficient consideration to support [the other party's] promise to arbitrate."); *Pierce v. Kellogg,*

*Brown & Root, Inc.*, 245 F. Supp. 2d 1212, 1215 (D. Okla. 2003) (finding arbitration agreement

supported by sufficient consideration in the form of the parties' mutual promises to forego

litigation of their disputes).  The Program reflects consideration consisting of the parties' mutual

promises to arbitrate their respective claims.  Accordingly, Plaintiff's argument fails.

Plaintiff also appears to argue that "the mere continuation of work on an at-will basis is

not sufficient consideration for a purported arbitration agreement."  (Pl.'s Resp. at 11.)

Purportedly in support of her contention, Plaintiff directs the court to cases in which courts

deemed arbitration clauses illusory and unenforceable because the clauses were contained in

---

[5]The plain-language Program Guide also represents that the Program binds Defendant and
its employees to arbitration.  The Program Guide states:
> [a]ny dispute covered by the [] Program (including disputes related to an
> employee's employment or termination of employment) that cannot be resolved by
> mutual agreement must be submitted to final and binding arbitration.  This means
> that both [Defendant] and the employee[] are waiving any right they may have to
> bring a lawsuit and to a jury trial . . . .

(Def.'s Br., Ex. A–2 at 2 [Program Guide].)

employment handbooks carrying a disclaimer that neither the handbooks nor their contents were meant to be construed as forming a contract. *See Phox v. Atriums Mgmt. Co.*, 230 F. Supp. 2d 1279, 1283 (D. Kan. 2002) (holding arbitration clause illusory and unenforceable where clause appeared in employment handbook containing disclaimer that it was not a contract); *Snow v. BE & K Constr. Co.*, 126 F. Supp. 2d 5, 15 (D. Me. 2001) (same). The case law Plaintiff cites is factually inapposite to the instant case. Here, the Program is presented as a discrete document containing rules and discrete document containing a plain-language explanation of the rules. (Def.'s Br., Ex. A–1 [Program Description and Rules], Ex. A–2 [Program Guide].) It is patently clear that the Program's arbitration clause does not appear in a handbook subject to a disclaimer.

Additionally, Plaintiff cites *Phox* for the proposition that an employer's "promise of employment" to an at-will employee cannot serve as consideration to support an arbitration agreement, because due to the very nature of at-will employment the employer could terminate the employee at any time. 230 F. Supp. at 1283. Poignantly, in the instant case, Defendant argues that consideration for the Program exists in the form of its reciprocal promise to arbitrate claims, not a promise of Plaintiff's continued employment. (Def.'s Br. at 11–13.) Moreover, "agreements implemented in the course of an at-will employment are enforceable if independently supported by consideration." *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 736 (7th Cir. 2002). In *Tinder*, the Seventh Circuit found that where an employee continued her at-will employment past the effective date of an arbitration policy and the employer bound itself to arbitration of its claims, "adequate consideration supported [the plaintiff's] agreement to arbitrate." *Id.* I find the same to be true in the instant case. Plaintiff continued her employment with Defendant until three weeks

after the Program's effective date and, as discussed above, Defendant itself is bound to arbitration.  (Def.'s Br. at 2–3, Ex. A–1 at 2 [Program Description and Rules].)  Accordingly, the Program is supported by adequate consideration, and is not illusory.

Finally, although Plaintiff does not expressly argue the point, I note that Defendant's limited abilities regarding amendment and termination do not render the Program illusory. Precedent in this circuit suggests that an arbitration agreement is not illusory where: (1) consideration exists in the form of the parties' mutual promises to forego litigation and substitute arbitration of claims; (2) the employer may only amend or terminate the agreement upon giving ten day notice to employees; and (3) neither an amendment nor termination will affect proceedings already initiated under the agreement.  *Pierce*, 245 F. Supp. 2d at 1215; *cf. Dumais v. Am. Golf Corp.*, 299 f.3d 1216, 1219 (10th Cir. 2002) ("[A]n arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory.").  Here, under the Program: (1) the parties are mutually bound to resolving disputes under the Program, including by arbitration; (2) Defendant may only amend or terminate the Program upon giving thirty day notice to employees; and (3) any amendment or termination will not affect any proceeding already initiated under the Program.  (Def.'s Br., Ex. A–1 at 2 [Program Description and Rules].)  Consequently, the Program is not an illusory contract.

### (2)      *Contract of Adhesion*

Plaintiff indirectly argues that the Program is an unenforceable contract of adhesion.[6] (Pl.'s Resp. at 12–14.)  Ostensibly in support of her argument, Plaintiff cites non-binding and unpersuasive case law from the California Supreme Court and the Seventh and Ninth Circuits. (Pl.'s Resp. at 13.)  Whether a contract is adhesive is a question of law for the court.  *Bauer v. Aspen Highlands Skiing Corp.*, 788 F. Supp. 472, 474 (D. Colo. 1992) (citing *Jones v. Dressel*, 623 P.2d 370, 374 [Colo. 1981]).

Plaintiff cites *Armendariz v. Foundation Health Psychcare Services*, 6 P.3d 669, 690–92 (Cal. 2000), in which the California Supreme Court found an agreement binding an employee, but not the employer, to mandatory arbitration to be adhesive and unconscionable.  Plaintiff's reliance on *Armendariz* is patently misplaced, in that the Program expressly binds both Defendant and its employees to arbitration, as discussed above.  (Def.'s Br., Ex. A–1 at 2 [Program Description and Rules], Ex. A–2 at 2 [Program Guide].)

Plaintiff also appears to argue that contracts of adhesion are unenforceable where an employee has not knowingly and voluntarily consented to be bound.  (Pl.'s Resp. at 13.) Plaintiff's argument is surprising, given her failure to allege that she did not knowingly and voluntarily consent to be bound by the Program.  (Pl.'s Resp., *passim*.)  Indeed, Plaintiff laments that to avoid being bound by the Program, she would have had to find new "work on only two

---

[6]Plaintiff's only direct statement that the Program is a contract of adhesion appears in the outline section title of her response, to wit: "The [] Program is an illusory contract and/or a contract of adhesion, and therefore unenforceable."  (Pl.'s Resp. at 11.)  The remainder of Plaintiff's unartfully drafted, two-page argument consists of references to and synopses of various cases regarding contracts of adhesion.  (Pl.'s Resp. at 12–14.)

months' notice" and would have had to tell potential employers that she had "refused to accept" the Program. (*Id.* at 13–14.)  With these statements, Plaintiff implicitly admits receipt of notice and awareness of a decision to accept or reject the Program.  Plaintiff's implicit admission undermines her argument that she did not knowingly and voluntarily consent to the Program, to the extent she so argues.  Nonetheless, I briefly address Plaintiff's argument.

Plaintiff directs the court to the Seventh Circuit's findings in *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1132 (7th Cir 1997), and the Ninth Circuit's decision in *Nelson v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756 (9th Cir. 1997).  Plaintiff's reliance on these cases surprising, given: (1) how obviously distinguishable they are from the instant matter; and (2) neither case deals with contracts of adhesion.  In *Gibson*, the Seventh Circuit held that an arbitration agreement that was unsupported by consideration was unenforceable.  121 F.3d at 1131–32.  The only discussion of contracts of adhesion in *Gibson* appears in the concurring opinion, in which the concurring judge noted that a "knowing and voluntary" arbitration agreement "would require, at the least, a single and explicit contractual document."  *Id.* at 1132.  Plaintiff does not allege that the Program lacks a single or explicit contractual document.  (Pl.'s Resp., *passim*.)  Indeed, the Program appears in the Program Description and Rules, a single and explicit contractual document.  (Def.'s Br., Ex. A–1 [Program Description and Rules].)  In *Nelson*, the Ninth Circuit refused to enforce an arbitration clause where the Plaintiff did not expressly agree to be bound by its terms, and thus did not knowingly agree to arbitrate his ADA claims.  119 F.3d at 761.  The *Nelson* court does not discuss contracts of adhesion.  *Id.*, *passim*. As previously discussed, the Program contains explicit language expressing that both parties are

bound to arbitration.  (Def.'s Br., Ex. A–1 at 2 [Program Description and Rules], Ex. A–2 at 2

[Program Guide].)

> In Colorado:
>
> [a]n adhesion contract is a contract drafted unilaterally by a business enterprise and
> forced upon an unwilling and often unknowing public for services that cannot
> readily be obtained elsewhere.  An adhesion contract is generally not bargained for,
> but is imposed on the public for a necessary service on a take or leave it basis.

*Jones*, 623 P.2d at 374.  Plaintiff's aforementioned implicit admission that she knowingly and

willfully accepted the Program defeats her argument that the Program is a contract of adhesion.

(Pl.'s Br. at 13–14.)  Based on the foregoing, I find that the Program does not constitute a

contract of adhesion.

### *(3)*     *Waiver*

Plaintiff argues Defendant waived its right to impose arbitration by rejecting mediation and

removing this case to federal court.  (Pl.'s Resp. at 8–10.)  The right to arbitration may be

waived, just as any other contractual right.  *Reid Burton Constr., Inc. v. Carpenters Dist. Council*

*of S. Colo.*, 614 F.2d 698, 702 (10th Cir. 1980).  "'There is no set rule as to what constitutes a

waiver or abandonment of the arbitration agreement; the question depends upon the facts of each

case.'"  *Adams v. Merrill Lynch Pierce Fenner & Smith*, 888 F.2d 696, 701 (10th Cir. 1989)

(quoting *Reid Burton*, 614 F.2d at 702).  Here, Plaintiff argues that Defendant waived its right to

impose arbitration, because its "intentional refusal to allow [Plaintiff] to avail herself of the eternal

mediation option under [the Program] is entirely inconsistent with its insistence on her adherence

to the arbitration option."  (*Id.* at 8.)

In *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482, 1489 (10th Cir. 1994), the Tenth Circuit set forth factors to determine whether a party has waived its right to enforce an arbitration agreement.  The six *Metz* factors are:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [*e.g.*, taking advantage of judicial discovery procedures not available in arbitration] had taken place;" and (6) whether the delay "affected, misled, or prejudiced" the opposing party.

*Id.* (alteration in original) (quoting *Peterson v. Shearson/Am. Express, Inc.*, 849 F.2d 464, 467–68 [10th Cir. 1988]); *see also McWilliams v. Logicon, Inc.*, 143 F.3d 573, 576 (10th Cir. 1998) (describing and approving *Metz* factors).  Here, Plaintiff does not offer allegations or evidence beyond the first *Metz* factor of inconsistent behavior.  (Pl.'s Resp. at 8.)  Unfortunately for Plaintiff, "[p]arties seeking to prove waiver of arbitration obligations bear a heavy burden." *Adams*, 888 F.2d at 701.  Indeed, "'[u]nder the federal policy favoring arbitration, a party does not waive arbitration merely by engaging in action inconsistent with an arbitration provision. Moreover, inconsistent behavior alone is not sufficient; the party opposing a motion to compel arbitration must have suffered prejudice.'"  *Id.* (quoting *ATSA of Cal., Inc. v. Cont'l Ins. Co.*, 702 F.2d 172, 175 [9th Cir. 1983]).  Plaintiff does not allege that she has suffered or would suffer prejudice by abandoning her litigation for arbitration.  (Pl.'s Resp., *passim.*)  Consequently,

Plaintiff's argument that Defendant waived its right to impose arbitration, based solely on Defendant's alleged inconsistent behavior, must fail.

Alternatively, Plaintiff argues that Defendant's removal of the case to federal court constitutes a waiver of its rights to impose arbitration.  (Pl.'s Resp. at 9–10.)  Plaintiff asserts the policy that a state may not invoke federal jurisdiction by removing a case only denying the propriety of federal jurisdiction by claiming Eleventh Amendment sovereign immunity ought apply in the instant case.  (*Id.*)  In support of her argument, Plaintiff relies heavily on the inapposite *Lapides v. Board of Regents of the University System of Georgia*, 535 U.S. 613 (2002), and *Meyers ex rel. Benning v. Texas*, 410 F.3d 236 (5th Cir. 2005), which both stand for the proposition that the principle of voluntary invocation, including the waiver-by-removal rule, applies to private suits which a state removes to federal court.  (Pl.'s Resp. at 9–10.)  Plaintiff's argument is utterly unavailing.  Plaintiff cites no support for her contention that Eleventh Amendment constitutional policies ought apply to instances of private contract, as in the instant case.  (*Id.*)  Further, Plaintiff's argument does nothing to satisfy the *Metz* factors described above. Finally, and most damningly, under the express terms of the Program, "removal of a legal proceeding shall not constitute waiver of the right to proceed under [the Program]."  (Def.'s Br., Ex. A–1 at 12 [Program Description and Rules].)  Accordingly, I find that Defendant did not waive its right to impose arbitration under the Program.

### *(4)    Breach of Contract*

Plaintiff argues that Defendant is in breach of the Program, and therefore she is absolved of any duties thereunder.  (Pl.'s Resp. at 5–8).  Plaintiff alleges that Defendant breached the

Program by advising Plaintiff's counsel that Plaintiff could mediate her claims, but could not have counsel present during said mediation.[7]   (*Id.* at 5.)   Under Colorado law, contract interpretation is "a question of law to be resolved by the court."   *Denver Ctr. for the Performing Arts v. Briggs*, 696 P.2d 299, 306 (Colo. 1985); *see also Grant v. Pharmacia & Upjohn Co.*, 314 F.3d 488, 491 (10th Cir. 2002).   Further, in Colorado, breach of contract requires: (1) existence of a contract; (2) performance by Plaintiff or some justification for nonperformance; (3) failure to perform by Defendant; and (4) damages.   *SGI Air Holdings II LLC v. Novartis Int'l AG*, 239 F. Supp. 2d 1161, 1170 (D. Colo. 2003); *Western Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).

Here, the Program satisfies the first element.   Under the Program, "[a]ll those involved may have legal representation" during mediation.   (Def.'s Br., Ex. A–1 at 8 [Program Description and Rules], Ex. A–2 at 10 [Program Guide].)   Plaintiff's argument fails at the second element. The Program Guide, the only document Plaintiff relies upon in her response brief, only provides for one option to initiate mediation proceedings.   Pursuant to the Program Guide, the employee must "contact [the American Arbitration Association] or [Judicial Arbitration and Mediation Services] to request mediation."   (Def.'s Br., Ex. A–2 at 10 [Program Guide].)   Plaintiff asserts that her counsel wrote a letter to Defendant "outlining [Plaintiff's] principal employment-related

---

[7]Defendant asserts that it made no such statement.   (Def.'s Reply at 5.)   Both parties provide affidavits in support of their contentions.   (*Id.*, Ex.A–8 ¶ 6 [Devine Aff.]; Pl.'s Resp., Ex. 1 ¶ 5 [Killmer Aff.].)   I must resolve the conflict in the light most favorable to Plaintiff.   *See Behagen v. Amateur Basketball Ass'n of the United States of Am.*, 744 F.2d 731, 733 (10th Cir. 1984).

claims against [Defendant], and inviting [Defendant] to negotiate a settlement." (Pl.'s Resp. at 4.) Plaintiff does not allege that she contacted either the American Arbitration Association ("AAA") or Judicial Arbitration and Mediation Services ("JAMS") in an attempt to initiate mediation. (*Id.*, *passim*.)  Accordingly, Plaintiff cannot establish that she has satisfied the Program Guide requirements.

Alternatively, the Program Description and Rules provide that an employee may initiate dispute resolution by mediation or arbitration in one of two ways: either (1) "by serving a written request to initiate proceedings on AAA or JAMS and tendering the appropriate administrative fee;" or (2) "by serving a written request to initiate proceedings on [Defendant's] [d]ispute [r]esolution [p]rogram [a]dministrator." (Def.'s Br., Ex. A–1 at 6 [Program Description and Rules].)  Significantly, "[t]he request shall describe the nature of the [d]ispute, the amount involved, if any, the remedy sought, and the proceeding locale requested." (*Id.*)  As discussed above, Plaintiff does not allege that she contacted AAA or JAMS, and thus has not satisfied the first option. (Pl.'s Resp., *passim*.)  Regarding the second option, Plaintiff contends that her counsel wrote a letter to Defendant proposing "a process of negotiating a settlement" of her claims. (Pl.'s Resp. at 5.)  Defendant attaches the letter to its reply brief. (Def.'s Reply, Ex. A–9 [10/11/04 Letter].)  The only mention of resolving Plaintiff's disputes appears in the final paragraph:

> [Plaintiff] is determined to secure a fair resolution of her claims.  She is not opposed to doing so short of commencing formal legal action, however.  If [Defendant should] have interest in pursuing this avenue, please contact [Plaintiff's counsel] by the close of business on October 22, 2004.  [Plaintiff's counsel] look[s] forward to hearing from [Defendant].

(*Id.*, Ex. A–9 at 2 [10/11/04 Letter].)  The letter falls woefully short of satisfying the requirements

under the Program Description and Rules.  The letter does not reflect Plaintiff's purported wish to

begin mediation proceedings pursuant to the Program.  (*Id.*)  Moreover, the letter does not

specify an amount in contention, a remedy sought, or a requested location for the proceedings.

(*Id.*; *see also* Def.'s Br., Ex. A–1 at 6 [Program Description and Rules].)  Accordingly, I find that

Plaintiff has neither performed her duties under the Program, nor justified her nonperformance.

Plaintiff's failure defeats the possibility of Defendant's breach.[8]  *SGI*, 239 F. Supp. 2d at 1170.

Based on the foregoing analysis *in toto*, I find that the Program is a valid and enforceable

agreement.

      **ii.**      ***Scope of the Program***

      Having determined that Program is valid, I turn to its scope.  In this action, Plaintiff

brings: (1) state law claims for breach of contract and termination in violation of public policy;

and (2) federal statutory claims arising under Title VII, the ADEA, FLSA, and the Equal Pay Act.

(Notice of Removal, Ex. A–2 ¶¶ 27–63 [Am. Compl.].)  I find that the Program contemplates all

---

[8]Plaintiff briefly argues that Defendant is in breach of an express covenant of good faith and fair dealing.  (Pl.'s Resp. at 7.)  Plaintiff cites *Decker v. Browning-Ferris Indus.*, 931 P.2d 436, 443 (Colo. 1997), for the contention that "the covenant of good faith and fair dealing in employment matters [] serves to protect the integrity of all of the promises made by the parties to the agreement setting forth the terms and conditions of employment."  (*Id.*)  Plaintiff's argument must fail.  First, it is difficult to ascertain how the Program could be construed as an agreement "setting forth the terms and conditions" of her employment.  Nevertheless, to the extent it could be so construed, Plaintiff's argument collapses on itself, for, as discussed above, Plaintiff has not fulfilled her promises or performed her duties under the Program.

of Plaintiff's claims.  The Program reflects an agreement that Defendant and its employees shall

resolve disputes regarding: "the employment or potential reemployment of an [e]mployee;" and:

> any other matter relating to or concerning the relationship between the [e]mployee
> and [Defendant] including . . . allegations of discrimination based on race, sex,
> religion, national origin, age, veteran status, disability, or other legally protected
> characteristic; sexual or other kinds of harassment; wrongful discharge; workers'
> compensation or other legally prohibited retaliation; defamation; infliction of
> emotional distress; failure to pay wages; and failure to comply with any mandatory
> leave or reinstatement obligations.

(Def.'s Br., Ex. A–1 at 1–2 [Program Description and Rules].)  Plaintiff's state law claims involve

wrongful discharge, wage issues, and the contractual relationship between Defendant and

Plaintiff, and are thus covered by the Program.  (Notice of Removal, Ex. A–2 ¶¶ 49–63 [Am.

Compl.].)  Plaintiff's federal claims under Title VII, the ADEA, FLSA, and the Equal Pay Act all

involve discrimination or retaliation based on her sex and age, and thus also are covered by the

Program.  (*Id.*, Ex. A–2 ¶¶ 27–48 [Am. Compl.].)  Agreements requiring arbitration of statutory

claims, such as the statutory claims at issue in the instant case, are enforceable under the FAA.

*See Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26–27 (1991) (stating "[i]t is by now

clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to

the FAA" and holding ADEA claim subject to compulsory arbitration); *Metz*, 39 F.3d at 1488

(concluding Title VII claims are subject to compulsory arbitration); *Shankle*, 163 F.3d at 1233

(holding "agreements which [sic] require arbitration of statutory claims are enforceable under the

[FAA]").

Pursuant to the Program: (1) "[a]ll [d]isputes not otherwise settled by the [p]arties shall be

finally and conclusively resolved through arbitration under [the Program Description and Rules],

instead of through trial before a court;" and (2) "[p]roceedings under the Program, including arbitration, shall be the exclusive, final and binding method by which [d]isputes are resolved." (Def.'s Br., Ex. A–1 at 3, 4 [Program Description and Rules].)  I find that arbitration of this matter is appropriate because: (1) the Program is a valid and enforceable contract; (2) Defendant is not in breach and did not waive its rights under the Program; (3) Plaintiff's claims are within the Program's scope; and (4) Plaintiff has attempted to pursue trial by filing the complaint now before this court.

### c.   *Defendant's Motion to Dismiss*

Defendant moves to dismiss Plaintiff's claims, arguing that due to the parties' valid arbitration agreement under the Program, this court does not maintain subject matter jurisdiction over the claims.  (Def.'s Br. at 14.)  Plaintiff argues that this court ought stay this matter during the pendency of the arbitration proceedings.  (Pl.'s Resp. at 14.)  The FAA allows a district court to stay judicial proceedings where a valid written agreement provides for the arbitration of the dispute that is the subject of the litigation.  *See Coors*, 51 F.3d at 1514.  The FAA provides:

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (2006).  Importantly, the FAA does not preclude a court from dismissing the case where appropriate.  Rather, "[t]he weight of authority clearly supports dismissal of the case when

*all* of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992) (emphasis in original); *see also Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (finding the FAA does not preclude dismissal when an arbitration clause bars all claims); *Sea-Land Serv., Inc. v. Sea-Land of P. R., Inc.*, 636 F. Supp. 750, 757 (D.P.R. 1986) (holding where all issues in the action are arbitrable and must be submitted to arbitration, "retaining jurisdiction and staying the action will serve no purpose"). Moreover, in Colorado, "'a valid and unwaived arbitration clause deprives the court of subject matter jurisdiction until the dispute has been submitted to arbitration.'" *Encore Prods., Inc. v. Promise Keepers*, 53 F. Supp. 2d 1101, 1111 (D. Colo. 1999) (quoting *Lee v. Grandcor Med. Sys., Inc.*, 702 F. Supp. 252, 253 [D. Colo. 1988]) (other citations omitted).

In the instant case, I have already determined that: (1) the Program comprises a valid and unwaived arbitration agreement; and (2) all of Plaintiff's claims are subject to arbitration under the Program. In accordance with the foregoing, no live controversies remain before this court. Consequently, I find that dismissal of this matter without prejudice is appropriate. *See Sea-Land Serv.*, 636 F. Supp. at 758. Pursuant to this course of action: (1) the issue of arbitrability is immediately appealable; and (2) the parties might avoid any cost and delay of litigation should the arbitration conducted be vacated by a subsequent appeal. *See id.* Finally, this decision does not preclude the parties' right to seek judicial review or enforcement of the arbitration award in the appropriate court, should they deem it necessary. *See id.*

     ***d.***     ***Objection to the Magistrate's Scheduling Order***

Defendant objects to the magistrate judge's setting a full discovery schedule while its motion to dismiss and compel arbitration remained pending, and moves the court to set aside the scheduling order.  (Def.'s Obj. at 5–6.)  Alternatively, Defendant moves the court to stay discovery pending determination of its motion to dismiss and compel arbitration.  (*Id.* at 6–8.) This Order and Memorandum of decision regarding Defendant's motion to dismiss and compel arbitration effectively moots Defendant's objection to the magistrate judge's scheduling order and motion to stay discovery.

*4.*     *Conclusion*

Based on the foregoing it is therefore ORDERED that:

1.      Defendant's motion to dismiss and compel arbitration (#5) is GRANTED.  2. Defendant's objection to the magistrate judge's scheduling order (#29) is OVERRULED as moot.

3.      Defendant's motion to stay discovery and expedite deferral to arbitration (#29) is DENIED as moot.

4.      The clerk shall forthwith enter judgment in favor of Defendant and against Plaintiff, dismissing Plaintiff's claims without prejudice.  Defendant may have its costs by filing a bill of costs within eleven days of the date of this order.

Dated this 7th day of July, 2006

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge